JUDGE KOELTL

08 CV 5500

629-07/PJG
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Barbara G. Carnevale (BC 1651)

RECEIVED
JUN 18 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---x

UNIVERSAL REEFERS LTD.,

Plaintiff,

-against-

DGM COMMODITIES a/k/a
DGM COMMODITIES, CORP.,

Defendant.

---x

**08 CIV.**

**VERIFIED COMPLAINT**

Plaintiff, UNIVERSAL REEFERS LTD. ("UNIVERSAL"), by its attorneys Freehill, Hogan and Mahar, LLP., as and for its Verified Complaint against Defendant DGM COMMODITIES a/k/a DGM COMMODITIES, CORP. ("DGM"), alleges upon information and belief as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract of charter party. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333 and the Court's federal question jurisdiction pursuant to 28 U.S.C. §1331. Federal jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et seq.*

2.     At all times material hereto, Plaintiff UNIVERSAL was and still is a foreign business entity duly organized and existing under the laws of the Isle of Man, with a business address at Douglas, Isle of Man, in the British Isles.

3.     At all times relevant hereto, Defendant DGM COMMODITIES a/k/a DGM COMMODITIES, CORP. was and still is a domestic business entity with an address at 111 Great Neck Road, Suite 208, Great Neck, New York 11021.

4.     On or about September 5, 2007, Plaintiff UNIVERSAL, in the capacity as owner of the M/V SNOW DRIFT, entered into a maritime contract of charter party with DGM, as charterer, for the carriage of frozen food products. (A copy of the charter party is attached as Exhibit A).

5.     Pursuant to the terms of the charter party, the vessel was duly delivered into service under the charter, the cargo was loaded onboard in Pascagoula and Mobile and the vessel proceeded to Mersin and Novorossiysk for discharge.

6.     Demurrage and detention were incurred in the course of the performance of the charter in the amounts of $461,072.50 and $481,115.34, respectively, relating primarily to the delays in discharge. (A copy of the demurrage and detention calculations are attached as Exhibit B).

7.     Plaintiff duly demanded payment from Defendant DMG in the amount of $942,187.84 for the outstanding demurrage and detention.

8.     In February 2008, Defendant DMG paid to Plaintiff a portion of Plaintiff UNIVERSAL's claim - that is $540, 210.99, but the balance of $401,976.85 remains due and owing to Plaintiff UNIVERSAL.

9.     Plaintiff UNIVERSAL has fulfilled all obligations required of it under the charter.

10. The charter party provides for the application of English law and all disputes between the parties to be resolved by arbitration in London.

11. Plaintiff UNIVERSAL has commenced arbitration proceedings against DMG in London, seeking recovery of the sum set forth above, and has also pled an alternative theory of recovery under English law which would result in a lower recovery.

12. This action is brought to obtain jurisdiction over Defendant DMG and to obtain security in favor of Plaintiff UNIVERSAL in respect to its claims against DMG under the theory of recovery which yields the higher damage amount, and in aid of those London proceedings.

13. This action is further brought to obtain security for additional sums to cover Plaintiff's anticipated attorneys' fees and costs in the London arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

14. Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorneys' fees, arbitrators' fees, disbursements and interest are recoverable as an element of Plaintiff's claim.

15. Plaintiff estimates, as nearly as can be computed, that the legal expenses and arbitral costs of prosecuting the claim in London will be $200,000 and interest on its damages are estimated to be $112,553.49 (calculated at the rate of 8% for a period of three and one half (3½) years, the estimated time for completion of the proceedings in London).

**Request for Rule B Relief**

16. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts,

wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter

hire and/or sub-charter hire or any other assets of, belonging to, due or being transferred for the

benefit of the said Defendant DGM COMMODITIES a/k/a DGM COMMODITIES, CORP.

(collectively hereinafter, "ASSETS"), including but not limited to ASSETS as may be held,

received or transferred in its own name, at, moving through, or being transferred and/or wired to

or from banking institutions or such other garnishees who may be served with a copy of the

Process of Attachment issued herein.

17.    The total amount to be attached pursuant to the calculations set forth above is

**$714,530.34**.

WHEREFORE, Plaintiff prays:

a.    That process in due form of law according to the practice of this Court may issue

against Defendant citing it to appear and answer the foregoing;

b.    That if Defendant cannot be found within this District pursuant to Supplemental

Rule B that all tangible or intangible property of Defendant up to and including

**$714,530.34** be restrained and attached, including, but not limited to any cash,

funds, escrow funds, credits, debts, wire transfers, electronic funds transfers,

accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter

hire, of, belonging to, due, held or being transferred to or for the benefit of

Defendant, at, moving through or being transferred and/or wired to or from

banking institutions or such other garnishees who may be served with a copy of

the Process of Maritime Attachment and Garnishment issued herein;

c.    That this Court retain jurisdiction over the matter for any further or supplemental

proceedings as may be necessary, including but not limited to the recognition and

enforcement of any judgment entered against the Defendant in the London proceedings; and

d. For such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
June 18, 2008

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
UNIVERSAL REEFERS LTD.

By: ______________________
Peter J. Gutowski (PG 2200)
80 Pine Street
New York, NY 10005
(212) 425-1900

**ATTORNEY VERIFICATION**

State of New York )
) ss.:
County of New York )

PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

1. I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

Peter J. Gutowski

Sworn to before me this
18th day of June, 2008.

Notary Public

**Lisa M. Morales**
**Notary Public, State of New York**
**No. 01MO6162004**
**Qualified in the Bronx**
**Commission Expires Feb. 26, 2011**

# EXHIBIT A

Adopted by the Documentary Committee of the General Council of British Shipping, London and the Documentary Committee of The Japan Shipping Exchange, Inc., Tokyo

RECOMMENDED
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE
UNIFORM GENERAL CHARTER (AS REVISED 1922 AND 1976)
INCLUDING "F.I.O." ALTERNATIVE, ETC.
(To be used for trades for which no approved form is in force)
CODE NAME: "GENCON"

Part I

1. Shipbroker

2. Place and date
*Rotterdam, 05th September 2007.*

3. Owners/Place of business (Cl. 1)
*Universal Reefers Ltd*
*Douglas*
*Isle of Man*
*British Isles*

4. Charterers/Place of business (Cl. 1)
*DGM Commodities*
*Great Neck, NY*
*U.S.A.*

5. Vessel's name (Cl. 1)
*m.v. "SNOW DRIFT"*

6. GRT/NRT (Cl. 1)

7. Deadweight cargo carrying capacity in tons (abt.) (Cl. 1)
*15.710 tons d.w.a.t. on 10,30 m ssw*
*629.567 cubic feet bale reefer space available for cargo*

8. Present position (Cl. 1)
*TRADING*

9. Expected ready to load (abt.) (Cl. 1)
*not before 24th September 2007.*

10. Loading port or place (Cl. 1)
*1 good safe berth always afloat, 1 port USGulf (New Orleans Mobile range) in Charterers option. (*)*

11. Discharging port or place (Cl. 1)
*1 good safe berth always afloat, Mersin + 1 Black Sea port in Charterers option, in that rotation.*

12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)
*Upto a full and complete cargo of Frozen Food Products in cartons (Intention Frozen Poultry products). (**)*

13. Freight rate (also state if payable on delivered or intaken quantity) (Cl. 1)
*U.S. $ 1.425.000,00 lumpsum FIOS basis 1/2*

14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)
*See Clause 24.*

15. Loading and discharging costs (state alternative (a) or (b) of Cl. 5; also indicate if vessel is gearless)

16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load. and disch., fill in c) only) (Cl. 6)
a) Laytime for loading
*See Clause 18.*
b) Laytime for discharging
*See Clause 18.*
c) Total laytime for loading and discharging

17. Shippers (state name and address) (Cl. 6)

18. Demurrage rate (loading and discharging) (Cl. 7)
*See Clause 50*

19. Cancelling date (Cl. 10)
*26th September 2007.*

20. Brokerage commission and to whom payable (Cl. 14)
*2,5% to Van Weelde Chartering B.V., Rotterdam*

21. Additional clauses covering special provisions, if agreed.
*Clauses 18/51, both included as attached, are deemed to be fully incorporated in and to form a part of this Charter Party*

*(*) Charterers' option to call at a second loadport within the agreed range against paying normal D/A (excluding Owners' items). Time at second loadport, if used, to count immediately on arrival if during normal working hours, otherwise from first resumption of port work.*

*(**) 16 x 40'reefer containers stowed on deck are at Charterers' disposal for cargo, free of freight.*

Copyright, published by The Baltic and International Maritime Conference (BIMCO), Copenhagen

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | *For and on behalf of the Charterers*<br>Signature (Charterers) |
|---|---|
| | |

## PART II

### Gencon Charter (As Revised 1922 and 1976)

1. It is agreed between the party mentioned in Box 3 as Owners of the ~~steamer or~~ motor-vessel named in Box 5, of the gross/nett Register tons indicated in Box 6 and carrying about the number of tons of deadweight cargo stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter about the date indicated in Box 9, and the party mentioned as Charterers in Box 4 that:
The said vessel shall proceed to the loading port or place stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (~~if shipment of deck cargo agreed same to be at Charterers' risk~~) as stated in Box 12 (Charterers to provide all mats and/or wood for dunnage and any separations required, the Owners allowing the use of any dunnage wood on board if required) which the Charterers bind themselves to ship, and being so loaded the vessel shall proceed to the discharging port or place stated in Box 11 as ordered on signing Bills of Lading or so near thereto as she may safely get and lie always afloat and there deliver the cargo on being paid freight on delivered or intaken quantity as indicated in Box 13 at the rate stated in Box 13.

2. **Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by the improper or negligent stowage of the goods (~~unless stowage performed by shippers/Charterers or their stevedores or servants~~) or by personal want of due diligence on the part of the Owners or their Managers to make the vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied or by the personal act or default of the Owners or their Manager.
And the Owners are responsible for no loss or damage or delay arising from any other cause whatsoever, even from the neglect or default of the Captain or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this clause, be responsible, or from unseaworthiness of the vessel on loading or commencement of the voyage or at any time whatsoever. Damage caused by contact with or leakage, smell or evaporation from other goods or by the inflammable or explosive nature or insufficient package of other goods not to be considered as caused by improper or negligent stowage, even if in fact so caused.

3. **Deviation Clause**
The vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist vessels in all situations, and also to deviate for the purpose of saving life and/or property. **See Clause 34**

4. **Payment of Freight** **See Clause 24**
The freight to be paid in the manner prescribed in Box 14 ~~in cash without discount on delivery of the cargo at mean rate of exchange ruling on day or days of payment, the receivers of the cargo being bound to pay freight on account during delivery, if required by Captain or Owners.~~
~~Cash for vessel's ordinary disbursements at the port of loading to be advanced by Charterers if required at highest current rate of exchange, subject to two per cent. To cover insurance and other expenses.~~

5. **Loading/Discharging**
~~*(a) Gross Terms~~ **See Clause 18**
~~The cargo to be brought alongside in such a manner as to enable vessel to take the goods with her own tackle. Charterers to procure and pay the necessary men on shore or on board the lighters to do the work there, vessel only heaving the cargo on board.~~
~~If the loading takes place by elevator, cargo to be put free in vessel's holds, Owners only paying trimming expenses.~~
~~Any pieces and/or packages of cargo over two tons weight, shall be loaded, stowed and discharged by Charterers at their risk and expense.~~
~~The cargo to be received by Merchants at their risk and expense alongside the vessel not beyond the reach of her tackle.~~
*(b) F.i.o. and free stowed~~/trimmed~~
The cargo shall be brought into the holds, loaded, stowed ~~and/or trimmed~~ and taken from the holds and discharged by the Charterers or their Agents, free of any risk, liability and expense whatsoever to the Owners.
The Owners shall provide winches, motive power and winchmen from the Crew, if available, if requested and permitted; if not, the Charterers shall provide and pay for winchmen from shore and/or cranes, if any. (This provision shall not apply if vessel is gearless and stated as such in Box 15).
*indicate alternative (a) or (b), as agreed, in Box 15.

6. **Laytime**
~~*(a) Separate laytime for loading and discharging~~
~~The cargo shall be loaded within the number of running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~
~~The cargo shall be discharged within the number of running hours as indicated in box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count.~~
~~(b) Total Laytime for loading and discharging~~
~~The cargo shall be loaded and discharged within the number of total running hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time actually used shall count~~ **See Clause 18**
*(c) Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at 2 p.m if notice of readiness is given before 10 a.m. ~~noon~~, and at 8 a.m. next working day if notice given during office hours after 10 a.m. ~~noon~~. Notice at loading port to be given to the Shippers named in Box 17. The Master is not allowed to tender Notice of Readiness prior to commencement of laydays. See Clause 18
~~Time actually used before commencement of laytime shall count.~~
Time lost in waiting for berth to count as loading or discharging time, as the case may be. Notice of readiness at loading can only be tendered provided vessel's compartments are precooled to minus 20 degrees celsius.
* indicate alternative (a) or (b) as agreed, in Box 16.

7. **Demurrage**
~~Ten running days on~~ Demurrage at the rate stated in Box 18 per day or pro rata for any part of a day, ~~payable day by day, to be allowed Merchants altogether~~ at ports of loading and discharging.

8. **Lien Clause**
The Owners shall have a lien on the cargo for freight, dead-freight, demurrage ~~and damages for detention~~. Charterers shall remain responsible for dead-freight and demurrage ~~(including damages for detention)~~, incurred at port of loading. Charterers shall also remain responsible for freight and demurrage ~~(including damages for detention)~~ incurred at port of discharge, ~~but only to such extent as the Owners have been unable to obtain payment thereof by exercising the lien on the cargo.~~

9. **Bills of Lading**
The Captain to sign Bills of Lading at such rate of freight as presented without prejudice to this Charterparty, but should the freight by Bills of Lading amount to less than the total chartered freight the difference to be paid to the Captain in cash on signing Bills of Lading.

10. **Cancelling Clause**
Should the Vessel not be ready to load (whether in berth or not) on or before the date indicated in Box 19, Charterers have the option of cancelling this contract, ~~such option to be declared, if demanded, at least 48 hours before vessel's expected arrival at port of loading.~~ Should the vessel be delayed on account of average or otherwise, Charterers to be informed as soon as possible, and if the vessel is delayed for more than 10 days after the day she is stated to be expected ready to load, Charterers have the option of cancelling this contract, unless a cancelling date has been agreed upon.

11. **General Average**
General Average to be settled in London according to York-Antwerp Rules. 1974 as amended 1990, Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see clause 2).

12. **Indemnity**
Indemnity for non-performance of this Charterparty, proved damages, not exceeding estimated amount of freight.

13. **Agency**
In every case the ~~Owners~~ Charterers shall appoint ~~his~~ their own Broker or Agent both at the port of loading and the port of discharge.

14. **Brokerage**
A brokerage commission at the rate stated in Box 20 on the freight deadfreight and demurrage earned is due to the party mentioned in Box 20.
In case of non-execution at least 1/3 of the brokerage on the estimated amount of freight and dead-freight to be paid by the Owners to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be mutually agreed.

15. **General Strike Clause**
Neither Charterers nor Owners shall be responsible for the consequences of any strikes or lock-outs preventing or delaying the fulfilment of any obligations under this contract.
If there is a strike or lock-out affecting the loading of the cargo, or any part of it, when vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there. Captain or Owners may ask Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, Owners shall have the option of cancelling this contract. If part cargo has already been loaded, Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
If there is a strike or lock-out affecting the discharge of the cargo on or after vessel's arrival at or off port of discharge and same has not been settled within 48 hours, Receivers shall have the option of keeping vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging, or of ordering the vessel to a safe port where she can safely discharge without risk of being detained by strikes or lock-out. Such orders to be given within 48 hours after Captain or Owners have given notice to Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charterparty and of the Bill of Lading shall apply and vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

16. **War Risks ("Voywar 1950")**
(1) In these clauses "War Risks" shall include any blockade or any action which is announced as a blockade by any Government or by any belligerent or by any organized body, sabotage, piracy, and any actual or threatened war, hostilities, warlike operations, civil war, civil commotion, or revolution.
(2) If at any time before the Vessel commences loading, it appears that performance of the contract will subject the Vessel or her Master and crew or her cargo to war risks at any stage of the adventure, the Owners shall be entitled by letter or telegram despatched to the Charterers, to cancel this Charter.
(3) The Master shall not be required to load cargo or to continue loading or to proceed on or to sign Bill(s) of Lading for any adventure on which or any port at which it appears that the Vessel, her Master and crew or her cargo will be subjected to war risks. In the event of the exercise by the Master of his right under this Clause after part or full cargo has been loaded, the Master shall be at liberty either to discharge such cargo at the loading port or to proceed therewith. In the latter case the Vessel shall have liberty to carry other cargo for Owners' benefit and accordingly to proceed to and load or discharge such cargo at any other port or ports whatsoever, backwards or forwards, although in a contrary direction to or out of or beyond the ordinary route. In the event of the Master electing to proceed with part cargo under this Clause freight shall in any case be payable on the quantity delivered.
(4) If at the time the Master elects to proceed with part or full cargo under Clause 3, or after the Vessel has left the loading port, or the

*RIDER TO THE CHARTER PARTY OF THE M.V. "SNOW DRIFT"*
*1 PORT USGULF / MERSIN + 1 BLACK SEA - FROZEN FOOD PRODUCTS*
*CHARTER PARTY DATED ROTTERDAM, 05TH SEPTEMBER 2007.*

***CLAUSE 18:***

*The vessel to be loaded, stowed and discharged by Shippers/Charterers/Receivers' stevedores free of risk and expense to the vessel within 21 total days of 24 consecutive hours, weather permitting, Saturdays, Sundays and holidays excluded, even if used.*

*At loadingport time from Friday 5 p.m. until Monday 8 a.m. or from 5 p.m. on a day preceding a holiday until 8 a.m. next working day not to count, even if used, unless vessel already being on demurrage.*

*At dischargingport time from Saturday noon until Monday 8 a.m. or from 5 p.m. on a day preceding a holiday until 8 a.m. next working day not to count, even if used, unless vessel already being on demurrage.*

*Time at second discharging port to count immediately on arrival if during normal working hours, otherwise as from first resumption of port work, provided vessel not on demurrage.*

*It is understood that weather permitting in relation to a vessel waiting for berth shall mean that time is exempt only for periods when the weather is of such a nature that it is preventing discharge of cargo from other reeferships under discharge of cargo of similar nature in the respective port. In case load/disch berth is congested, Master has the right to tender N.O.R. from pilot station WIPON/WIBON/WCCON/WIFPON and laytime to count as per charter party. Sailing time between anchorage place and berth not to count as laytime.*

***CLAUSE 19:***

*The vessel's holds and reefer containers to be clean, dry and free from smell and in every way fit for loading a cargo of frozen food products in cartons.*
*629.567 cubic feet bale reefer space available for cargo including hatchcoamings in which cargo may be loaded plus 16 X 40' reefer containers stowed on deck.*

***CLAUSE 20:***

*Overtime to be for account of the party ordering same but overtime ordered by port controller always to be for Charterers' account. Overtime of Officers and crew always to be for Owners' account.*

***CLAUSE 21:***

*First opening and last closing of hatches to be done by ship's crew and to be for Owners' account and time if allowed by local regulations/trade unions, otherwise for Charterers' account and time.*

../2

*CLAUSE 22:*

*New Jason, Both to Blame Collision Clause, P & I Bunkering and Deviation Clause, Voywar 1950 Clause to be included in this Charter Party.*

*CLAUSE 23:*

*The vessel to give free use of her cranes/derricks/winches, power to drive same during day and night and to maintain them in good working order. Owners also to supply lights as on board for night-work if required free of expense to the Charterers.*
*Time lost owing to breakdown of cranes/winches/derricks not to count as loading/discharging time pro rata in relation to the number of hatches/gangs affected by this breakdown.*
*Any stevedore standby time by reason of winch/crane/derrick breakdown shall be for Owners account.*
*Vessel's cargo gear and all other equipment shall comply with regulations established by U.S. Public Law 85-742 part 9 (Safety and Health Regulations for Longshoring).*

*CLAUSE 24:*

*Minimum US$. 600.000 payable latest 3 days prior to vessel's arrival at Mersin and the balance latest 3 days prior to vessel's arrival at the second disport. Clean "Congen" Bills of Lading to be issued with the mention "Freight payable as per Charter Party dated Rotterdam, 05th September 2007.", and released upon vessel departure from loadport. Freight deemed earned on signing Bills of Lading, discountless, non returnable, ship and/or cargo lost or not lost.*

*CLAUSE 25:*

*The Master to sign clean Bills of Lading but Master/Officers have the right to refuse any cargo which does not allow the signing of clean Bills of Lading. "Congen" Bills of Lading to be used. Possible presence of blood stains on the cartons not to be a reason to reject the cargo nor remark the Bills of Lading. Vessel will not accept any claims for cargo discharged with blood stains on the cartons unless such blood stains are caused by malfunction of vessel's equipment.*

*CLAUSE 26:*

*Vessel to be responsible for the number of cartons loaded.*
*Owners have the option to seal the hatches upon completion of loading. Unbroken seals on arrival at discharging port to be conclusive evidence that the number of cartons loaded have been discharged. Sealing/unsealing expenses to be for Owners' account.*

***CLAUSE 27:***

*Before commencement of loading the Owners to supply the Charterers with a Lloyds or equivalent pre-loading certificate showing that the vessel is in every way fit to accept and carry a cargo of frozen food products in cartons and that the reefer plant is in good working order. Charterers/Shippers to give written cooling instructions to the Master at the loadingport. The Master to follow exactly the instructions of the Charterers/Shippers re cooling en-route.*
*The representative of the receivers and/or the Charterers to have the liberty to check the ship's logbook showing the temperatures held during the voyage. The stowage of the cargo to be under the Master's supervision. The Master must especially take care that the stowage in no way should harm the normal and efficient ventilation and/or cooling system.*

***CLAUSE 28:***

| | | |
|---|---|---|
| *Agents loadport (s)* | : | *to be nominated by Charterers* |
| *Agents dischargingports* | : | *to be nominated by Charterers* |

***CLAUSE 29:***

*The Master/Owners to give 7/5 days approximate and 72/48/24 hours definite notice of vessel's loadreadiness to agents at the loadingport and to "VAN WEELDE CHARTERING B.V., Rotterdam. The Master/Owners to cable vessel's e.t.a. dischargingport on sailing loadingport furthermore they give 7/5 days approximate and 72/48/24 hours definite notice of vessel's arrival at dischargingport to the receivers or their agents at dischargingport and to VAN WEELDE CHARTERING B.V., Rotterdam.*
*E-mail: reefer@vanweelde.nl*
*Fax number of Van Weelde Chartering B.V.: +31 10 433 2490*

***CLAUSE 30:***

*Demurrage, if any, is payable by the Charterers within 5 days from presentation of timesheets and/or statement of facts signed by the Master/Agents and/or Receivers.*

../4

*CLAUSE 31:*

*OIL POLLUTION*

*Owners of this vessel have obtained and supplied their vessel with certificate of financial responsibility (Oil Pollution) in compliance with the requirements of the U.S. Water Quality Improvement Act of 1970. Owners further guarantee that this vessel will not be restricted due to non compliance with this Act.*

*CLAUSE 32:*

*Vessel not having called Cuba for the last 6 months.*

*CLAUSE 33:*

*Any taxes/dues on cargo and/or freight, or calculated on same to be for Charterers' account. Any taxes/dues on vessel and/or flag to be for Owners' account.*

*CLAUSE 34:*

*Immediately after completion of loading vessel to proceed maximum safe speed to the first dischargingport without making any stops en route except for bunkering/lifesaving.*

*CLAUSE 35:*

*The master and/or chief mate (first officer) shall issue mate's receipts on a daily basis attesting to the type of cargo (as indicated on the outside of cartons), quantity and apparent external condition of cargo loaded each day and reciting that the cargo has been received from Shipper.*

*CLAUSE 36:*

*Master to inform VWC (Van Weelde Chartering B.V.) in writing of the vessel's position every 3 days. Additionally, when the vessel is 48 hours from its ETA at Creta Island/Dardanelles, the master shall immediately notify VWC in writing.*

../5

***CLAUSE 37:***

*Bills of Lading shall be issued pursuant to the authority of the Owners by (1) the master, or (2) on behalf of the master by Owners or Owners' authorized agents in conformity with the mate's receipts, and each bill of lading shall name ...tbn... as Shipper and be made out "to order" without naming a specific consignee, or as other-wise specified in writing by Shipper. Bills of Lading shall not contain or incorporate arbitration forum selection or choice-of-law clauses unless such clauses are approved in writing by ...tbn.... In the event that any such clauses nevertheless may appear in one or more bills of lading through inadvertence or otherwise without having been approved in writing by ...tbn., any such clauses shall be void and inoperative and Owners expressly waive the applicability and enforceability of any such clauses.*

***CLAUSE 38:***

*Before Owners may exercise a lien on the cargo for freight under any provision of this charter party or otherwise, Owners first must demand payment from Charterers and Shippers of the freight and, if appropriate, any deafreight that is due.*
*Any such demand must be in writing and directed to Van Weelde Charterering B.V.*
*In case freight is not paid within 5 banking days from Owners'demand Owners shall have a lien on the cargo for freight and deafreight and upon any other provision of this charter party.*

***CLAUSE 39:***

*Neither Owners nor the Master shall permit the cargo to be discharged until they have been presented with Original Bills of Lading at the ports of discharge.*

***CLAUSE 40:***

*In case the Original Bills of Lading do not arrive at the discharging port timely, Charterers and/or the Shipper shall have the option of having the vessel discharge the goods without presentation of Original Bills of Lading but against the standard Letter of Guarantee requested by Owners's P. & I. Club for discharge of cargo without presentation of Original Bills of Lading and signed by the Charterers and/or the Shippers. Charterers and/or Shipper, however, may exercise these options only through VWC and Owners shall follow such instructions only if they are furnished by VWC in writing and only if such instructions advise that ...tbn... approve the instructions..*
*Nothing contained herein shall alter the requirement that the cargo shall not be discharged without presentation of Original Bills of Lading unless VWC has notified Owners and the master that ...tbn... have authorized the discharge in writing.*

***CLAUSE 41:***

*......tbn......., as a third party beneficiary of this Charter Party, shall have the unrestricted, unqualified right, notwithstanding any instructions or requests from Charterers to the contrary, to either (i) hold the vessel at Creta Island/Dardanelles or outside the territorial waters of the discharge port, or (ii) divert the vessel to another discharge port upon the payment of additional freight which shall be set at a reasonable rate being charged for comparable voyages. If ...tbn..... exercises its right to hold the vessel, laytime shall count as per the Charter Party from the moment the anchor is dropped in response to the exercise of such right until the anchor is lifted. ......tbn....... may exercise its right to hold or divert the vessel at any time, even after discharge has commenced. In the event that ......tbn....... should elect to hold or divert the vessel, notice shall be given to Owners by VWC. Owners warrant that, in the event of a diversion at ......tbn.......... request, the vessel shall proceed with reasonable dispatch to the newly nominated port of discharge.*

*Any exercise by ... tbn....... of such right of holding or diversion shall be accompanied by a binding undertaking to Owner directly from ......tbn....... to make the payments specified above as well as any payments due for freight, deadfreight or otherwise under any provision of this Charter Party*

***CLAUSE 42:***
***Arbitration and Applicable Law***

*The Charter Party shall be governed and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, and the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint its arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.*

*For disputes where the total amount claimed by either party does not exceed the amount of US$. 50.000,00 the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.*

***CLAUSE 43:***
***FORCE MAJEURE***

*If at any time Charterers are prevented in loading/discharging/providing cargo as a result of Force Majeure, the affected voyage may be cancelled without liability to Charterers, upon giving a 48 hours written notice thereof. The following events will be considered as Force Majeure under this clause : Ban of trade between U.S.A. and Turkey/Countries in the Black sea, Governmental intervention, War (whether declared or not), rebellion, insurrection, political disturbances,*
*civil commotion, fire, peril of the sea, acts of God, barratry, or any other catastrophic cause beyond control of the Charterers hereto preventing the fulfillment of this contract.*

../7

*CLAUSE 43 – Continuation*

*If cargo has been loaded on the vessel the Owners and Charterers shall try to reach a mutually agreeable solution for the disposition of the cargo and payment to the Owners for the cost and expense of the voyage including vessel's time. If the parties are unable to reach a prompt solution, then the Owner may discharge the cargo at the nearest available port, with ample cold storage, and shall be paid for the voyage pursuant to the terms of this contract adjusted up or down for any added cost or savings.*

*CLAUSE 44:*
*BIMCO STANDARD ISM CLAUSE*

*From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this charter party, the Owners shall procure that both the vessel and the Managers, (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.*
*Except as otherwise provided in this charter party, loss, damage, expense or delay caused by failure on the part of the Owners or the Managers to comply with the ISM Code shall be for the Owners' account.*

*CLAUSE 45:*

*If requested by Charterers, the vessel, after completion of loading, to wait in port or if permitted on the anchorage of the loadingport for veterinary certificates and/or other documents as required which to be handed over to the captain. Such waiting time to count in full. Captain and Owners to be responsible for the safe delivery of these documents to the authority at the discharging port indicated by the Charterers. In case these documents will be lost on board of the vessel, all time lost and the consequences to be for Owners' account.*

*CLAUSE 46:*

*Terms/details/conditions of this Charter Party to remain strictly private and confidential and not to be disclosed.*

*CLAUSE 47:*

*U.S. SECURITY CLAUSE FOR VOYAGE CHARTERING*

*If the Vessel calls in the United States, including any U.S. territory, the following provisions shall apply with respect to any applicable security regulations or measures:*

*Reporting*
*The Vessel or its agents shall report and send all notices as required to obtain entry and exit clearances from the relevant U.S. authorities. Any delay caused by the failure to so report shall be for the Owners' account, unless such failure to report is caused by or attributable to the Charterers or their representatives or agents including but not limited to the shipper and/or receiver of the cargo.*

*Clearances*
*Unless caused by the Owners' negligence, any delay suffered or time lost in obtaining the entry and exit clearances from the relevant U.S. authorities shall count as laytime or time on demurrage.*

*Expenses*
*Any expenses or additional fees relating to the cargo, even if levied against the Vessel, that arise out of security measures imposed at the loading and/or discharging port and/or any other port to which the Charterers order the Vessel, shall be for the Charterers' account.*

*Notice of Readiness*
*Notwithstanding anything to the contrary contained in this Charter Party the Vessel shall be entitled to tender Notice of Readiness whether cleared for entry or not by any relevant U.S. authority.*

*CLAUSE 48:*
*BIMCO ISPS / MTSA CLAUSE FOR VOYAGE CHARTER PARTIES 2005*

*(a) (i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).*

*(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).*

*CLAUSE 48 - Continuation*

*(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.*

*(b) (i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code / MTSA.*

*(ii) Loss, damages or expense (excluding consequential loss, damages or expense) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party, and any delay caused by such failure shall count as laytime or time on demurrage.*

*(c)Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code/MTSA, the following shall apply:*

*(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code / MTSA.*

*(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code / MTSA shall count as laytime or time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers.*

*(d) Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code / MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.*

*(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.*

../10

*CLAUSE 49:*

*ELIGIBILITY CLAUSE*

*Owner warrants that the Vessel complies and shall throughout the Charter Party comply in all respects with all applicable laws and regulations in force at any nominated port within the loading and discharge ranges, and that the Vessel at all necessary times shall have onboard all certificates, records and other documents required for such service. In the event the Owner fails so to comply:*

*a) The Charterer shall have the option to cancel the Charter Party without incurring any penalty or cost and*
*b) any delays incurred shall not count as laytime or time on demurrage.*

*The rejection of the Vessel by local authorities shall be deemed to be a failure by the Owner to comply.*

*CLAUSE 50:*
*Demurrage:* *US$ 11.000,00 per day pro rata first 5 days*
*US$ 12.500,00 per day pro rata thereafter*

*Free despatch*

*CLAUSE 51:*
*DESCRIPTION CLAUSE:*

- *M.V. "SNOW DRIFT"*
- *Built 1973, Cook Islands flag*
- *15.710 mt d.w.a.t. on 10,30 m ssw*
- *Loa 173,40 m / Beam 24,65 m*
- *629.567 cubic feet bale reefer space available for cargo including hatchcoamings in which cargo may be loaded*
- *Vessel has on deck 16 forty foot reefer containers available for cargo which do not hamper normal loading/discharging operations*
- *About 12.000 mt dwcc*
- *5 holds/5 hatches/22 compartments*
- *certified to maintain temperatures down to -30 d.c.*
- *Geared: 8 x 5 mt cranes*
- *Fully gratingsfitted, suitable for work with forklifts upto 5 tons weight incl cargo.*
- *Lloyds 100A1 or equivalent with RMC in order*
- *Fully P & I covered by 1st class PandI club (Gard) for full duration of this Charter Party*
- *Fully insured for H + M for full duration of this Charter Party*
- *Vessel did not call Cuba for the last 6 months*
- *Vessel's fully ISPS approved*

*THE OWNERS:* *FOR AND ON BEHALF OF THE CHARTERERS:*

# EXHIBIT B

**SCHEDULE A**

Laytime: load port Pascagoula

## SCHEDULE A

Laytime: load port Pascagoula

m.v. SNOW DRIFT

Charterer: DGM Commodities, New York.

From /To: Pascagoula + Mobile / Mersin + Novorossiysk

C/P: Gencon - all ports reversible, working time saved, once on demurrage always on demurrage
21 ttl days - excluded from Fri 1700 hrs until Mon 0800hrs.

Loading at: **Pascagoula**

| | | | |
|---|---|---|---|
| Mon | 24-Sep-07 | 05:15 | Vessel arrived |
| Mon | 24-Sep-07 | 05:15 | NOR tendered |
| Mon | 24-Sep-07 | 08:00 | Valid/accepted |
| Mon | 24-Sep-07 | 05:54 | Left anchorage |
| Mon | 24-Sep-07 | 07:30 | Vessel berthed |
| Mon | 24-Sep-07 | 11:00 | Loading commenced |
| Mon | **24-Sep-07** | **14:00** | Laytime commenced |
| Fri | **28-Sep-07** | **18:30** | Laytime completed |

| Date | | From | Until | Remarks | Time Used hrs | Total Time d h m |
|---|---|---|---|---|---|---|
| Mon | 24-Sep-07 | 14:00 | | Time to count | | |
| Friday | 28-Sep-07 | | 18:30 | Loading completed | | 4 4:30 |
| | | | | less rain | | 0 0:30 |

| | |
|---|---|
| Total time remaining all ports: | 21d 00:00 |
| Time used in this port: | 04d 04:00 |
| Time remaining: | **16d 20:00** |

**SCHEDULE B**

Laytime: load port Mobile

# SCHEDULE B

Laytime: load port Mobile

m.v. SNOW DRIFT Charterer: DGM Commodities, New York.

From /To: Pascagoula + Mobile / Mersin + Novorossiysk

C/P: Gencon - all ports reversible, working time saved, once on demurrage always on demurrage
21 ttl days - excluded from Fri 1700 hrs until Mon 0800hrs.

Loading at: **Mobile**

| | | | |
|---|---|---|---|
| Fri | 28-Sep-07 | 22:54 | Vessel arrived |
| Fri | 28-Sep-07 | 22:54 | NOR tendered |
| Sun | 28-Sep-08 | 22:54 | Valid/accepted |
| Sun | 30-Sep-08 | 07:41 | Left anchorage |
| Sun | 30-Sep-07 | 11:00 | Vessel berthed |
| Mon | 01-Oct-07 | 08:00 | Loading commenced |
| Mon | **01-Oct-07** | **08:00** | Laytime commenced |
| Fri | **05-Oct-07** | **00:10** | Laytime completed |

| Date | | From | Until | Remarks | Time Used hrs | Total Time d h m |
|---|---|---|---|---|---|---|
| Mon | 01-Oct-07 | 08:00 | | Time to count | | 3 16:10 |
| Friday | 05-Oct-07 | | 00:10 | Loading completed | | 0 1:30 |
| | | | | less rain | | |

| | |
|---|---|
| Total time remaining all ports: | 16d 20:00 |
| Time used in this port: | 03d 14:40 |
| Time remaining: | **13d 05:20** |

**SCHEDULE C**

Laytime: discharge port Mersin

# SCHEDULE C

Laytime: discharge port Mersin

m.v. SNOW DRIFT Charterer: DGM Commodities, New York.

From /To: Pascagoula + Mobile / Mersin + Novorossiysk

C/P: Gencon - all ports reversible, working time saved, once on demurrage always on demurrage
21 ttl days - excluded from Fri 1700 hrs until Mon 0800hrs.

Discharging **Mersin**

| | | | |
|---|---|---|---|
| Sun | 21-Oct-07 | 23:30 | Vessel arrived |
| Sun | 21-Oct-07 | 23:30 | NOR tendered |
| Mon | 22-Oct-07 | 08:00 | Valid/accepted |
| Mon | 22-Oct-07 | 00:16 | Left anchorage |
| Mon | 22-Oct-07 | 01:18 | Vessel berthed |
| Mon | 22-Oct-07 | 10:00 | Discharging commenced |
| Mon | **22-Oct-07** | **14:00** | Laytime commenced |
| Wed | **24-Oct-07** | **17:20** | Laytime completed |

| Date | | From | Until | Remarks | Time Used hrs | Total Time d h m |
|---|---|---|---|---|---|---|
| Mon | 22-Oct-07 | 14:00 | | Time to count | | |
| Wed | 24-Oct-07 | | 17:20 | Discharging completed | | 2 03:20 |
| | | | | less rain | | 0 00:00 |

Total time remaining all ports: 13d 05:20
Time used in this port: 02d 03:20

Time remaining: **11d 02:00**

**SCHEDULE D**

Laytime and demurrage: discharge port Novorossiysk
(until acceptance of repudiatory breach)

# SCHEDULE D

Laytime and demurrage: discharge port Novorossiysk
(until acceptance of repudiatory breach)

m.v. SNOW DRIFT Charterer: DGM Commodities, New York.

From /To: Pascagoula + Mobile / Mersin + Novorossiysk

C/P: Gencon - all ports reversible, working time saved, once on demurrage always on demurrage
21 ttl days - excluded from Fri 1700 hrs until Mon 0800hrs.

Discharging **Novorossisyk**

| | | | |
|---|---|---|---|
| Sun | 28-Oct-07 | 08:42 | Vessel arrived |
| Sun | 28-Oct-07 | 08:42 | NOR tendered |
| Mon | 29-Oct-07 | 08:00 | Valid/accepted |
| | | | Left anchorage |
| | | | Vessel berthed |
| Mon | 22-Oct-07 | 10:00 | Discharging commenced |
| Mon | **29-Oct-07** | **08:00** | Laytime commenced |
| Wed | **17-Jan-08** | **16:55** | Laytime completed |

| Date | | From | Until | Remarks | Time Used hrs | Total Time d h m |
|---|---|---|---|---|---|---|
| Mon | 29-Oct-07 | 08:00 | 24.00 | Time to count | 16.00 | 0 16:00 |
| Tues | 30-Oct-07 | 00:00 | 24.00 | | 24.00 | 1 16:00 |
| Wed | 31-Oct-08 | 00:00 | 24.00 | | 24.00 | 2 16:00 |
| Thu | 01-Nov-07 | 00:00 | 24.00 | | 24.00 | 3 16:00 |
| Fri | 02-Nov-07 | 00:00 | 24.00 | | 24.00 | 4 16:00 |
| Sat | 03-Nov-08 | 00:00 | 12.00 | | 12.00 | 5 4:00 |
| Sun | 04-Nov-07 | 00:00 | 24.00 | Time excluded | 0.00 | 5 4:00 |
| Mon | 05-Nov-07 | 08:00 | 24.00 | | 16.00 | 5 20:00 |
| Tues | 06-Nov-07 | 00:00 | 24.00 | | 24.00 | 6 20:00 |
| Wed | 07-Nov-07 | 00:00 | 24.00 | | 24.00 | 7 20:00 |
| Thu | 08-Nov-07 | 00:00 | 24.00 | | 24.00 | 8 20:00 |
| Fri | 09-Nov-07 | 00:00 | 24.00 | | 24.00 | 9 20:00 |
| Sat | 10-Nov-07 | 00:00 | 12.00 | | 12.00 | 10 8:00 |
| Sun | 11-Nov-07 | 00:00 | 24.00 | Time excluded | 0.00 | 10 8:00 |
| Mon | 12-Nov-07 | 08:00 | 24.00 | | 16.00 | 11 00:00 |
| Tues | 13-Nov-07 | 00:00 | 02:00 | | 02:00 | 11 02:00 |
| Tues | 13-Nov-07 | 02:00 | | **Vessel on demurrage** | | |
| Tues | 13-Nov-08 | 02:00 | 24.00 | **Demurrage time counting** | 22.00 | 0 22:00 |
| Wed | 14-Nov-07 | 00:00 | 24.00 | | 24.00 | 1 22:00 |
| Thu | 15-Nov-07 | 00:00 | 24.00 | | 24.00 | 2 22:00 |
| Fri | 16-Nov-07 | 00:00 | 24.00 | | 24.00 | 3 22:00 |
| Sat | 17-Nov-07 | 00:00 | 24.00 | | 24.00 | 4 22:00 |
| Sun | 18-Nov-07 | 00:00 | 24.00 | | 24.00 | 5 22:00 |
| Mon | 19-Nov-07 | 00:00 | 24.00 | | 24.00 | 6 22:00 |
| Tues | 20-Nov-07 | 00:00 | 24.00 | | 24.00 | 7 22:00 |
| Wed | 21-Nov-07 | 00:00 | 24.00 | | 24.00 | 8 22:00 |
| Thu | 22-Nov-07 | 00:00 | 24.00 | | 24.00 | 9 22:00 |
| Fri | 23-Nov-07 | 00:00 | 24.00 | | 24.00 | 10 22:00 |
| Sat | 24-Nov-07 | 00:00 | 24.00 | | 24.00 | 11 22:00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Sun | 25-Nov-07 | 00:00 | 24.00 | | 24.00 | 12 22:00 |
| Mon | 26-Nov-07 | 00:00 | 24.00 | | 24.00 | 13 22:00 |
| Tues | 27-Nov-07 | 00:00 | 24.00 | | 24.00 | 14 22:00 |
| Wed | 28-Nov-07 | 00:00 | 24.00 | | 24.00 | 15 22:00 |
| Thu | 29-Nov-07 | 00:00 | 24.00 | | 24.00 | 16 22:00 |
| Fri | 30-Nov-07 | 00:00 | 24.00 | | 24.00 | 17 22:00 |
| Sat | 01-Dec-07 | 00:00 | 24.00 | | 24.00 | 18 22:00 |
| Sun | 02-Dec-07 | 00:00 | 24.00 | | 24.00 | 19 22:00 |
| Mon | 03-Dec-07 | 00:00 | 24.00 | | 24.00 | 20 22:00 |
| Tues | 04-Dec-07 | 00:00 | 24.00 | | 24.00 | 21 22:00 |
| Wed | 05-Dec-07 | 00:00 | 24.00 | | 24.00 | 22 22:00 |
| Thu | 06-Dec-07 | 00:00 | 24.00 | | 24.00 | 23 22:00 |
| Fri | 07-Dec-07 | 00:00 | 24.00 | | 24.00 | 24 22:00 |
| Sat | 08-Dec-07 | 00:00 | 24.00 | | 24.00 | 25 22:00 |
| Sun | 09-Dec-07 | 00:00 | 24.00 | | 24.00 | 26 22:00 |
| Mon | 10-Dec-07 | 00:00 | 24.00 | | 24.00 | 27 22:00 |
| Tues | 11-Dec-07 | 00:00 | 24.00 | | 24.00 | 28 22:00 |
| Wed | 12-Dec-07 | 00:00 | 24.00 | | 24.00 | 29 22:00 |
| Thu | 13-Dec-07 | 00:00 | 24.00 | | 24.00 | 30 22:00 |
| Fri | 14-Dec-07 | 00:00 | 24.00 | | 24.00 | 31 22:00 |
| Sat | 15-Dec-07 | 00:00 | 24.00 | | 24.00 | 32 22:00 |
| Sun | 16-Dec-07 | 00:00 | 24.00 | | 24.00 | 33 22:00 |
| Mon | 17-Dec-07 | 00:00 | 24.00 | | 24.00 | 34 22:00 |
| Tues | 18-Dec-07 | 00:00 | 24.00 | | 24.00 | 35 22:00 |
| Wed | 19-Dec-07 | 00:00 | 24.00 | | 24.00 | 36 22:00 |
| Thu | 20-Dec-07 | 00:00 | 13.40 | **Reply re: repudiatorybreach** | 13.40 | 37 11:40 |

**DEMURRAGE FOR 37d 11h 40m**

| | | | | | |
|---|---|---|---|---|---|
| **Thu** | 20-Dec-07 | 13:40 | **Time on detention** | | |
| Wed | 17-Jan-08 | | 16:55 Discharging completed | TTL TIME USED | 76 16:55 |
| | | | less rain | | 0 00:00 |

**DETENTION FOR 28d 03h 15m**

| | | |
|---|---|---|
| Total time remaining all ports: | | 11d 02:00 |
| Time used in this port: | | 76d 16:55 |
| Time remaining: | minus | 65d 14:55 |

| | | | |
|---|---|---|---|
| **DEMURRAGE:** | 1st 5 days @ $1100 per 24hrs | **US$** | **55,000.00** |
| | Thereafter 32d 11h 40m @ $12500 per 24hrs | **US$** | **406,072.50** |
| | | **TOTAL** | **461072.50** |
| **DETENTION:** | 28d 3h 15m @ $17100 per 24hrs | **US$** | **481,115.34** |

| | | |
|---|---|---|
| TOTAL | US$ | 942,187.84 |
| Less payment on account | US$ | 540,210.99 |
| TOTAL DUE | US$ | 401,976.85 |

**SCHEDULE E**

Laytime and demurrage: discharge port Novorossiysk
(alternative case)

# SCHEDULE E

## Laytime and demurrage: discharge port Novorossiysk
(alternative case)

m.v. SNOW DRIFT Charterer: DGM Commodities, New York.

From /To: Pascagoula + Mobile / Mersin + Novorossiysk

C/P: Gencon - all ports reversible, working time saved, once on demurrage always on demurrage
21 ttl days - excluded from Fri 1700 hrs until Mon 0800hrs.

Discharging **Novorossisyk**

| | | | |
|---|---|---|---|
| Sun | 28-Oct-07 | 08:42 | Vessel arrived |
| Sun | 28-Oct-07 | 08:42 | NOR tendered |
| Mon | 29-Oct-07 | 08:00 | Valid/accepted |
| | | | Left anchorage |
| | | | Vessel berthed |
| Mon | 22-Oct-07 | 10:00 | Discharging commenced |
| Mon | **29-Oct-07** | **08:00** | Laytime commenced |
| Wed | **17-Jan-08** | **16:55** | Laytime completed |

| Date | | From | Until | Remarks | Time Used hrs | Total Time d h m |
|---|---|---|---|---|---|---|
| Mon | 29-Oct-07 | 08:00 | 24.00 | Time to count | 16.00 | 0 16:00 |
| Tues | 30-Oct-07 | 00:00 | 24.00 | | 24.00 | 1 16:00 |
| Wed | 31-Oct-08 | 00:00 | 24.00 | | 24.00 | 2 16:00 |
| Thu | 01-Nov-07 | 00:00 | 24.00 | | 24.00 | 3 16:00 |
| Fri | 02-Nov-07 | 00:00 | 24.00 | | 24.00 | 4 16:00 |
| Sat | 03-Nov-08 | 00:00 | 12.00 | | 12.00 | 5 4:00 |
| Sun | 04-Nov-07 | 00:00 | 24.00 | Time excluded | 0.00 | 5 4:00 |
| Mon | 05-Nov-07 | 08:00 | 24.00 | | 16.00 | 5 20:00 |
| Tues | 06-Nov-07 | 00:00 | 24.00 | | 24.00 | 6 20:00 |
| Wed | 07-Nov-07 | 00:00 | 24.00 | | 24.00 | 7 20:00 |
| Thu | 08-Nov-07 | 00:00 | 24.00 | | 24.00 | 8 20:00 |
| Fri | 09-Nov-07 | 00:00 | 24.00 | | 24.00 | 9 20:00 |
| Sat | 10-Nov-07 | 00:00 | 12.00 | | 12.00 | 10 8:00 |
| Sun | 11-Nov-07 | 00:00 | 24.00 | Time excluded | 0.00 | 10 8:00 |
| Mon | 12-Nov-07 | 08:00 | 24.00 | | 16.00 | 11 00:00 |
| Tues | 13-Nov-07 | 00:00 | 02:00 | | 02:00 | 11 02:00 |
| Tues | 13-Nov-07 | 02:00 | | **Vessel on demurrage** | | |
| Wed | 17-Jan-08 | | 16:55 | Discharging completed | | 76 16:55 |
| | | | | less rain | | 0 00:00 |

Total time remaining all ports: 11d 02:00
Time used in this port: 76d 16:55

Time remaining: minus **65d 14:55**

| | | |
|---|---|---|
| Demurrage for 1st 5 days @ $11000pd/pr | | 55,000.00 |
| Thereafter 60d 14h 55m @ $12500pd/pr | | 757,768.80 |
| Total Demurrage | US$ | **812,768.80** |
| Less payment on account | US$ | 540,210.99 |
| TOTAL DUE | US$ | 272,557.81 |