629-07/PJG

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Barbara G. Carnevale (BC 1651)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNIVERSAL REEFERS LTD.,

**08 CIV. 5500 (JGK)**

                    Plaintiff,

        -against-

DGM COMMODITIES a/k/a
DGM COMMODITIES, CORP.,

                    Defendant.
------------------------------------------------------------x


## MEMORANDUM IN OPPOSITION TO MOTION TO VACATE

## PRELIMINARY STATEMENT

This memorandum is submitted on behalf of the plaintiff Universal Reefers Ltd. ("Universal") in opposition to the defendants' motion to vacate the attachment. For the reasons set forth below, this motion does not involve the simple application of the language in <u>Aqua Stoli</u> to the defendants' business presence in the Eastern District. To the contrary, under the particular circumstances of this case, we do not have a so-called cross border situation of the type contemplated in <u>Aqua Stoli</u>, and as a consequence the attachment should be maintained because the defendant is not available for suit in the Eastern District.

## REPLY ON THE FACTS

The facts involved in the underlying dispute are not particularly germane to the issue before the Court but a brief overview of the situation is warranted. Under a charter party dated September 5, 2007, the defendant DGM undertook to arrange for the prompt discharge of the vessel upon arrival at the discharge port. It utterly failed in that obligation and the vessel was exposed to extraordinary delays giving rise to claims of demurrage and detention. In this respect, the vessel arrived off the nominated discharge port in late October 2007. Instead of arranging for prompt berthing and discharge, the defendants left the vessel drifting at sea with instructions not to enter the port without further instructions while they attended to their other unspecified problems. Days turned into weeks, and the defendants discarded the fact that the vessel was running out of fuel, fresh water and indeed food, admonishing the vessel to stay outside the port for fear of entry, even for reasons of safety, might implicate their sale of the cargo of chicken parts.

In the end, the vessel was obligated to make direct contact with the port for fear that she would lose power for lack of fuel, placing the vessel and crew at risk and the vessel was finally permitted to enter, but even then defendants were circumscribed on what they would permit the vessel to take on in the way of stores and fuel. Defendants only arranged for berthing in late December, the actual discharge was itself extraordinarily long, and the plaintiff obviously received no remuneration for the defendants at this time giving rise to the significant claims for demurrage and detention which form the subject matter of this action.

To add slap to insult, defendants then resisted the payment of the debt, eventually made only a partial payment on account, acknowledges that a certain portion of the claim is admittedly due ($87,500) but has not paid that, and has declined to pay the balance, prompting plaintiffs to initiate this security proceeding.

The charter provides for arbitration in London and is mandatory. As such, the plaintiff is not at liberty to sue DGM anywhere in the United States on the merits. The subject action is a security proceeding only and the plaintiff recognized and disclosed DGM's presence in the Eastern District, but plaintiff's search revealed no presence whatsoever in the Southern District and DGM does not allege that it is present for purposes of Rule B here.

As such, this motion presents the single issue of whether, in circumstances of a claim that cannot be litigated on the merits in the United States, the dicta in Aqua Stoli precludes an attachment in aid of the foreign arbitration because the defendant has a presence in an adjacent district. For the reasons set forth below, plaintiff submits the attachment should stand.

## POINT I

### *AQUA STOLI* DOES NOT PRECLUDE AN ATTACHMENT IN THE CIRCUMSTANCES OF THIS CASE

At the outset, and as briefly mentioned above, this is a single-issue motion. Defendants do not challenge that the plaintiff satisfies the grounds for an attachment insofar as the plaintiff has a *prima facie* maritime claim and the Defendant cannot be found within the Southern District of New York, where the attachment is sought. This constitutes the requirements under the Rule itself and there is no dispute that these requirements have been satisfied. Instead, the sole basis upon which defendants challenge the attachment is their business presence in the Eastern District of New York, and their argument that this presence implicates *dicta* in the Second Circuit's discussion in Aqua Stoli, 460 F.3d 434, 445 (2d Cir. 2006). There are three reasons discussed more fully below why the defendants' position is incorrect in this situation.

At the outset, it is important to note that the language relied upon by the defendants is not the holding in Aqua Stoli. In point of fact, the focus of the Aqua Stoli decision was whether the judicially created "need for an attachment" test was justified, and that test was rejected in favor of a mechanical application of the terms of Rule B itself as to when and under what circumstances an attachment could issue. In the course of the Second Circuit's discussion, however, other comments were made with respect to various situations not present in Aqua Stoli and it is that language upon which defendants base their application. In order to put this into proper perspective, it is necessary to digress briefly and review the underpinnings to the Aqua Stoli decision and the prior cases which led to the Second Circuit's analysis of whether a need-based test was even

appropriate and the background to the comments about a so-called across-the-river situation.

In this respect, the genesis of the Second Circuit's discussion in <u>Aqua Stoli</u> regarding the potential for vacature of attachments against a defendant found in convenient adjacent districts can be traced to several district court decisions from the Southern District, all stemming from Judge Baer's decision in <u>Royal Swan Nav. Co. v. Global Container Lines, Ltd.</u>, 868 F.Supp. 599 (S.D.N.Y. 1994). In <u>Royal Swan</u>, Judge Baer granted an attachment against Global Container Lines. Global (which was located in Garden City in the Eastern District) moved to vacate the attachment on several grounds, including that it was in fact "found" in the Southern District and that in any event the attachment was abusive or unfair because it could be found across the river and the attachment sought an undue advantage. In that case, plaintiffs having failed to demonstrate any real need for an attachment, Judge Baer utilized his discretion to vacate the attachment on the basis that it was unfair under the particular circumstances of that case.

As a consequence of the <u>Royal Swan</u> decision, a number of other judges in the Southern District began to read into the Rule an additional criteria for an attachment – this being the issue of whether the plaintiff really had a "need' for security in a given case. This gave rise to what became commonly known, for a brief period of time, as the "need" test. In fact, <u>Aqua Stoli</u> itself involved an attachment which was vacated at the district court level by Judge Rakoff on application of this need-based analysis. 460 F.3d at 439. (Attachment vacated because plaintiff did not have a need for security), and it was the need based analysis which was the issue on appeal.

Other cases dealing with the same issue (i.e. need-based analysis) had reached contrary conclusions. By way of illustration, Judge Haight in <u>Rolls Royce Industrial Power (India) v. M.V. FRATZIS M</u>, 1996 A.M.C. 390 (S.D.N.Y. May 23, 1995), which was decided only a few months after <u>Royal Swan</u>, and importantly involved a Rule B attachment **against the very same defendant** as in <u>Royal Swan</u>, (Global) determined that under the particular facts of the <u>FRATZIS M</u> case, security was appropriate even though the defendant was located in a convenient adjacent district across the river in the Eastern District.

Taken together, <u>Royal Swan</u>, <u>FRATZIS M</u> and the district court's decision in <u>Aqua Stoli</u> illustrate that the state of the law, prior to the appeal in <u>Aqua Stoli</u> was such that there was no absolute bar to an attachment in a cross-border situation. Rather, applying a case-by-case analysis, the opportunity for an attachment would be evaluated on a case by case basis.

Moving forward to the Second Circuit decision in <u>Aqua Stoli</u>, defendants argue that there is now a hard and fast rule mandating vacature. In support of this, they misleadingly cite only to certain dicta in the <u>Aqua Stoli</u> case, leaving out the language (which was repeated twice by the Second Circuit) which makes clear that these situations are not absolute, but instead leave the district court with discretion based upon the facts of a particular case.[1]

---

[1]  In effect, therefore, leaving in place the analysis conducted by the courts in the decisions which preceded <u>Aqua Stoli</u> but eliminating the "need" analysis, it is clear that vacature is not required automatically in an "across-the-river" case, but rather that vacature or not should be determined in a case by case basis with regard to whether an unfairness is visited upon the defendant located in the adjacent district. The Second Circuit makes clear twice in <u>Aqua Stoli</u> that convenient adjacent jurisdiction vacature is proper when the defendant is subject to an *in personam* suit in the adjacent district. 460 F.3d 444, 445. It is to this point that we turn to next.

Indeed, Aqua Stoli implies no such rule with its use of permissive language stating instead (with discretionary language) only that attachments *may* be vacated if the defendant is located in a convenient adjacent jurisdiction:

> "The concept of "convenience" however, is a narrowly circumscribed one: A district court may vacate a maritime attachment only if the defendant would be subject to an *in personam* lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought."

*Id. at 444.*

Further in the decision, the Court repeats this permissive language and notes that it is speaking in terms of dicta by saying:

> "the exact scope of a district court's vacatur power is not before us, [but] we believe that a district court may vacate the attachment if the defendant shows at the rule E hearing that the defendant is subject to suit in a convenient jurisdiction … "

*Id. at 445.*

Therefore, as an initial starting point, the defendants' suggestion that this court is handcuffed by Aqua Stoli is incorrect and misleading. A fair reading of that case implies no such hard and fast rule.

This dovetails with the previous decisions which led up to Aqua Stoli, as outlined above, the only difference being that the holding in Aqua Stoli eliminates the "need-based" test. As such, and under the present state of the law, it is within the Court's power to either sustain or vacate an attachment in an across-the-river situation and such decisions are rooted in issues of fairness. In order to put flesh on the bones of "fairness", we look to those previous decisions for guidance and they support maintenance of the attachment here, where there is an admitted debt that the defendants are not paying and they callously breached the contract and left the vessel at risk as outlined above.

One test of fairness set forth in Royal Swan is whether the defendant is available for suit in a convenient adjacent district. The Aqua Stoli/Royal Swan language traces the reasoning that if a plaintiff seeks an attachment against a defendant in the Southern District when that defendant could just as easily be sued on the merits "across the river" in the Eastern District, the attachment might be deemed unfair.

In reviewing those prior decisions, as set forth above, the test for fairness incorporates an analysis of whether the defendant is available for suit in that adjacent district. Here, they are clearly not so situated because of the mandatory arbitration provision which requires adjudication by arbitration in London. This is not a situation where we crossed the river to seek some unfair advantage by not suing in the convenient adjacent district but instead involves circumstances where plaintiff seeks security for the non-payment of admitted debt and the balance due for the wrongful conduct in failing to arrange for the prompt discharge of the vessel while pursuing the claim on the merits in London arbitration. Under the court's discretionary power, this attachment should therefore be maintained. Even utilizing the dicta defendants rely upon, we are simply not in a situation which falls within the dicta because the defendants are not and cannot be sued on this case in the Eastern District.

Turning finally to the other cases cited by defendants as ancillary support for their position, Onego Shipping provides no real support either way because defendants failed to advise the court that Judge Stanton reached the opposite result in respect to a defendant who was found in Connecticut. *See* First American Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC, 540 F.Supp.2d 483, 485-6 (S.D.N.Y. 2008). (Defendant who could be found in Connecticut was subject to an attachment in the Southern District.) As

such, Onego provides no real guidance in this situation, but First American's discussion about the discretionary nature of the Court's power in an across-the-river situation, is on point.

With regard to Far Eastern, that case reinforces the point that what is required is business contacts within the Southern District for an across-the-river defendant. Here, there is no such situation. Defendants make no claim to any contacts with the Southern District of New York and as such, the rationale underscoring the decision in Far Eastern is irrelevant.

## CONCLUSION

Vacatur is not mandatory under Aqua Stoli, but rather subject to the discretion of the Court. Based upon a fairness analysis the attachment here should be sustained. Indeed, we are not even in an Aqua Stoli-like across the river situation because the defendant cannot be sued on the merits in the Eastern District.

> FREEHILL HOGAN & MAHAR, LLP
> Attorneys for Plaintiff
>
> /s/
> Peter J. Gutowski (PG 2200)
> 80 Pine Street
> New York, NY 10005
> (212) 425-1900
> (212) 425-1901 fax